IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NORGUARD INSURANCE COMPANY,

    Plaintiff,

v.

SERVEON INC.,

    Defendant /
    Third Party Plaintiff,

v.

HARRY DAVID ZUTZ INS., INC., &
MATTHEW DOYLE,

    Third Party Defendants.

HON. JEROME B. SIMANDLE

Civil No. 08-900 (JBS/AMD)

**OPINION**

APPEARANCES:

Kevin J. Connors, Esq.
William K. Conkin, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1220 N. Market St., Suite 500
P.O. Box 8888
Wilmington, DE 19899
    Counsel for Norguard Insurance Company

Francis J. Murphy, Jr., Esq.
Lauren A. Pisapia Cirrinicione, Esq.
MURPHY, SPADARO & LANDON
1011 Centre Road
Suite 210
Wilmington, DE 19805
    Counsel for Serveon Inc.

Whitney W. Deeney, Esq.
Mark A. Simanowith, Esq.
SAUL EWING LLP
222 Delaware Ave #1200
P.O. Box 1266
Wilmington, DE 19899
    Counsel for Matthew Doyle and Willis of Delaware Inc.
    (formerly known as Harry David Zutz Insurance Inc.)

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This insurance-related declaratory judgment action is before the Court on Serveon Inc.'s objections, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to Magistrate Judge Ann Marie Donio's October 8, 2010 Order. [Docket Items 130 ("Order") & 131 ("Objections").] The Order granted in part and denied in part the motion of the Zutz Third Party Defendants to compel Defendant/Third Party Plaintiff Serveon to produce certain insurance documents and denied a motion by Serveon to quash a subpoena that sought related insurance application documents from three non-parties. [See Docket Item 130.] For the reasons explained below, the Court will affirm.

## II. BACKGROUND

This case is about insurance coverage for the tragic death of Daniel Hart, former CEO of Serveon, who died in an airplane crash while piloting the craft for Serveon. Mr. Hart's widow filed for the proceeds of worker's compensation insurance. Norguard, the Pennsylvania insurance company that Serveon hired to cover it for worker's compensation-related incidents, filed this complaint for declaratory judgment against Serveon regarding worker's compensation insurance coverage for the accident. According to Norguard, in the initial application for the

insurance, a box indicating whether Serveon owned, operated, or leased an aircraft was checked "No." Norguard is attempting to use this alleged misrepresentation to deny payment.

Serveon argues, among other things, that even if the misstatement regarding the aircraft constitutes a misrepresentation, it was an error made by Norguard's own agent. The application was submitted by one of Norguard's brokers, Matthew Doyle, working for Harry David Zutz Insurance, Inc. Serveon has impleaded Doyle and Zutz, arguing that Doyle knew, after the application was submitted but before Norguard issued policy, that Mr. Hart flew an airplane for the business of Serveon. Therefore, they argue, to the extent the worker's compensation coverage does not include the aircraft, the Zutz Defendants breached their duty to Serveon to provide the coverage. Serveon also maintains that it cannot be responsible for the application because neither Hart nor any other Serveon representative signed it.

In order to defend themselves from Serveon's allegations, Third-party Defendants Zutz and Doyle asked Serveon to produce all insurance policy applications that it applied for since 2002, in an attempt to show that earlier, signed insurance applications made the same misrepresentation regarding the aircraft. [See Docket Item 103.] The Zutz Defendants also issued subpoenas to insurance companies that would have received applications from

Hart from 2002 until the Norguard policy — including Zurich Insurance Company, Twin City Fire Insurance Company, and Paychex Insurance Agency, Inc. Serveon did not produce all of the applications, having apparently determined some to be irrelevant, [id.], and moved to quash the subpoenas that were served on Zurich, Twin Cities, and Paychex. [Docket Item 105.]

The Zutz Third Party Defendants asked the Court to compel production of the documents. [Docket Item 103.] The Zutz parties maintained that this discovery would reveal that while Mr. Hart operated an aircraft for Serveon (and his previous business, Sofwerks), he continually misrepresented to insurance brokers and carriers that he did not operate a plane for business.

At a hearing on September 22, 2010, Magistrate Judge Donio entertained Serveon's motion to quash the subpoenas of companies to which it submitted insurance applications, as well as its argument that the information sought from it was irrelevant and therefore outside the bounds of discovery under Rule 26 of the Federal Rules of Civil Procedure. Judge Donio found that Serveon lacked standing to quash the subpoenas, and that the information sought was relevant. Judge Donio therefore compelled production of the information sought, though she limited it to 2003

forward.[1]  Serveon now seeks review of Judge Donio's Order.

## III. DISCUSSION

### A. Standard of Review

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, a party may serve and file objections to an order of a magistrate judge within 14 days after being served with a copy. The district judge may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. In discovery matters, decisions of the magistrate judge are given great deference and will be reversed only for an abuse of discretion. See, e.g., Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996). The burden of showing that the magistrate judge's ruling is clearly erroneous or contrary to law rests with the party filing the appeal, here Serveon. Travelers Indem. Co. v. Dammann & Co., 592 F. Supp. 2d 752, 758-59 (D.N.J. 2008). A decision is "clearly erroneous" when

---

[1] Judge Donio's Order compels production of "1) all insurance applications completed by or on behalf of Serveon or any business entity under Serveon's control for the time period of 2003, 2004, and 2005; 2) documents sought by the subpoena issued to Twin City, limited to those signed by Daniel Hart and for the time period of 2003, 2004, and 2005; 3) documents sought by the subpoena issued to Zurich, limited, in so far as they seek documents relating to SofWerks, to those signed by Daniel Hart, and for the time period of 2003, 2004, and 2005; and 4) documents sought by the subpoena issued to Paychex, limited, in so far as they seek documents relating to SofWerks, to those signed by Daniel Hart, and for the time period of 2003, 2004, and 2005. (DI 131 1-3)

"although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Thus, especially in reviewing discovery matters, the reviewing court recognizes that "under the 'clearly erroneous' standard, . . . in the absence of clearly defined parameters, a Magistrate [Judge] has wide discretion to make interstitial rulings of law in the interests of justice and fairness, provided that the Magistrate's opinion is based on clearly articulated principles." Schroeder v. Boeing Comm'l Airplane Co., 123 F.R.D. 166, 169 (D.N.J. 1988) (Cohen, J.)

**B. Standing to Quash**

Generally, only the entity subject to the subpoena has standing to challenge it. See Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981). "However, a party may raise objections in situations where the party claims some personal right or privilege relating to the documents sought." Id. See also Rule 45(c)(3)(A)(iii) (providing that a Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter."). Serveon argues that having "private contracts and exchanges" with an entity subject to subpoena "create[s] a privacy interest" in

6

information sought from the entity related to the contract. (Serevon's Br. 2.)

Serveon misreads the single case it cites for the proposition that a general privacy interest in business relationships creates standing to challenge a subpoena. See Ace Hardware Corp. v. Celebration Ace Hardware, LLC Misc. Action No. 09-109-SLR, 2009 WL 3242561, at *2 (D. Del. October 08, 2009). Ace Hardware involved a subpoena issued to non-party Delaware Sterling Bank & Trust Company for bank records relating to a trust which had as its co-trustees Dominick Devito, Jr. and Sherri Devito. Ms. Devito moved to quash the subpoena, arguing that she had standing because the Bank was only provided with the documents pursuant to a private trust agreement of which she is a co-trustee and serves pursuant to a private agreement. The Court held that Devito had a personal privilege in the trust documents because they were bank records of the Trust for which she was co-trustee. Id. at *2 ("Personal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information.").[2] By contrast, in this

---

[2] Moreover, the motion to quash was unopposed in Ace Hardware. Id. at *1. The Court found the subpoena to be facially defective and unenforceable because it called for a Delaware bank to produce documents outside the district, id. at *3, and because the subpoena sought to compel the production at a location more than 100 miles from where the non-party resides or personally transacts business, contrary to Rule 45(c)(3)(A)(2),

7

case, Judge Donio found that there was no personal right or privilege relating to the documents sought, because the information sought did not involve bank or tax records. (Tr. 47:4-11.) Ace Hardware did not hold that every contract or prospective contract is privileged; it merely reiterated the widely-accepted view that bank records are generally confidential, and confer standing on the party whose records they are to quash a subpoena served on a bank for those records.[3]

Serveon also argues that these subpoenas will increase the costs in this case and delay action, thereby giving Serveon standing to move to quash the subpoena. This argument is both new (and therefore an inappropriate basis for objection, as it should have been raised before Judge Donio) and meritless. Serveon cites United States v. Raineri, 670 F.2d 702, (7th Cir. 1982), a criminal case in which the defense was seeking to use a trial subpoena to compel a witness who had already been called, examined, and cross-examined, to appear to testify again. Id. at 712. The Seventh Circuit Court of Appeals found that the Government had standing to quash because the subpoena infringed on its legitimate interest in "preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial

---

Fed. R. Civ. P. Id. at *4.

[3] Serveon also has no relationship with one of the entities subject to subpoena, Zurich, as that application was made on behalf of Sofwerks while Hart worked for that company.

8

overemphasis on [the witness's] credibility." Id. Even if this precedent were persuasive in this civil case in which entirely more liberal standards of discovery apply, none of those interests are present with respect to this pre-trial civil subpoena. Merely complaining that pre-trial discovery takes time and costs money cannot provide a sufficient basis to confer standing to quash a subpoena of a non-party, as such a grant of standing would eviscerate the general rule that a party does not have standing to challenge the subpoena of a non-party.[4]

**C. Relevance**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense." Relevance is measured not by admissibility, but by whether the information "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

---

[4] Judge Donio also ruled that even if Serveon had standing, the motion to quash would have been denied, finding that "if I were to accept the standing of defendant to oppose the subpoenas, I reject the argument that the subpoenas seek information beyond the scope of Rule 26. The very same reason that I am granting the motion to compel, I am permitting the discovery of the third party subpoenas." (Tr. 47:4-11.) Thus, even if Serveon had standing, Judge Donio's judgment would be correct, as explained below.

The Zutz Third Party Defendants seek to corroborate their testimony that Mr. Hart deliberately represented that there was no aircraft because he did not want coverage for the aircraft. If the Zutz Defendants discover prior insurance applications signed by Hart denying the existence of the aircraft, they will be in a better position to undermine the inference Serveon attempts to draw from the unsigned application, namely, that it was an aberration or error created by the Zutz Defendants. They will also know which insurance brokers they should depose about Hart's previous answers regarding the aircraft on other insurance applications.

Serveon argues that the insurance policy applications are irrelevant for three reasons: (1) they were created before Hart even acquired the aircraft; (2) they extend beyond the scope of worker's compensation policies; and (3) Hart's actions were not those of Serveon. None of these arguments has merit.

The first argument, regarding timing, was not raised before Judge Donio, and is by all appearances factually false. In the record of the hearing before Judge Donio, counsel for the Zutz Third Party Defendants represented that it was undisputed that Mr. Hart "owned and/or operated an aircraft since 2001 or 2002 and continuously did so through is death and did so for business purposes." (Tr. 11:1-6.) If this information was incorrect, counsel for Serveon failed to say so at the time. Since the

purpose of seeking this information is, in part, to show that Hart was aware of the need to make a decision about whether to disclose the aircraft on the worker's compensation application, then seeking information from before the formation of Serveon is still relevant.

As to the scope of applications sought, when asked by Judge Donio why the request was not limited to worker's compensation insurance applications, counsel for Zutz explained that other kinds of insurance may contain similar representations regarding the status of the aircraft, which was purchased in 2002. (Tr. 13:16-25.) This is a perfectly reasonable basis for expanding the scope of the subpoena beyond worker's compensation applications. Judge Donio acknowledged that the scope was wider that just worker's compensation applications, and nevertheless found the information sought to be relevant. (Tr. 45:15-18, 46:1-7, 8-21.) It was not an abuse of discretion for Judge Donio to find that other kinds of insurance applications going back to 2003 may contain information about the aircraft, and therefore may be relevant in showing Hart's prior decisions and knowledge about the insurance coverage process.

Finally, Serveon argues that Hart's behavior before he was CEO of Serveon is irrelevant to Serveon, because Hart's previous behavior cannot be imputed to Serveon. This argument mistates the putative relevance of these documents. The idea is not that

documents showing Hart's previous behavior will necessarily be admissible to impute that conduct to Serveon, but rather that the documents may show, or lead to evidence that may show, that Hart was aware that this aircraft issue arose in insurance applications, and that he previously signed applications electing not to disclose the existence of an aircraft he piloted for business. Or, this discovery may reveal that Hart previously disclosed the aircraft's existence in insurance applications, which would likewise be probative of Hart's intent for Serveon's insurance coverage. In either event, this does not mean that Hart's previous conduct is imputed to Serveon, nor even prove that Hart made the same decision as CEO of Serveon. But it may undermine or refute (or, at a minimum, potentially lead to admissible evidence that may undermine or refute) Serevon's argument that the fact that the insurance application in this case says "no" to the aircraft question and was never signed is evidence that the Zutz parties did something contrary to Hart's intentions.

Thus, Judge Donio's decision on relevance was not only not an abuse of discretion, it was the same decision as this Court would have made.

**IV. CONCLUSION**

Because Serveon lacks standing to quash the subpoenas of non-parties in this case (and in any case has no sound basis for

quashing the subpoenas), and because the information sought from Serveon and these non-parties is relevant to this action, Judge Donio's Order will be affirmed.

The accompanying Order will be entered.

January 28, 2011
Date

JEROME B. SIMANDLE
United States District Judge